IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CVR ENERGY, INC.,                          )
                                           )
            Plaintiff,                     )        Case No. 13-2547-JAR-TJJ
                                           )
v.                                         )
                                           )
WACHTELL, LIPTON, ROSEN & KATZ,            )
et al.,                                    )
                                           )
            Defendants.                    )
_____   )

## MEMORANDUM AND ORDER

Before the Court is specially appearing Defendants Wachtell, Lipton, Rosen & Katz ("Wachtell Lipton"), Benjamin M. Roth, and Andrew R. Brownstein's Motion to Dismiss under Rule 12(b)(2) and 12(b)(3) for Lack of Personal Jurisdiction and Improper Venue (Doc. 9). Plaintiff CVR Energy, Inc. ("CVR") opposes the motion, and moves in the alternative for transfer of this action (Doc. 31). The Court granted CVR's request to conduct limited jurisdictional discovery (Doc. 24). The Court has considered the briefs, as well as the evidence submitted with the briefs and is prepared to rule. As described more fully below, the Court finds Defendants are not subject to personal jurisdiction, but rather than grant the motion to dismiss, the Court grants CVR's request to transfer this case to the United States District Court for the Southern District of New York.

## I.      Factual Background

Drawing all reasonable inferences in favor of Plaintiff CVR, the following facts are taken from the Complaint and attached exhibits, and the declarations and exhibits attached to the parties' briefs. The Court does not consider any general or conclusory allegations unsupported

by affidavit or other evidence.

CVR is a holding company incorporated in Delaware, whose stock is listed on the New York Stock Exchange.  CVR is headquartered in Sugarland, Texas, and has corporate offices in Kansas and Oklahoma, where it operates refineries.  The Kansas office is where the Chief Financial Officer, General Counsel and legal department are located.

In January 2012, Carl Icahn, a New York hedge fund operator and corporate raider, announced that he had purchased a sizeable stake in CVR and threatened the company with a hostile takeover.  Edmund Gross, CVR's general counsel, placed unsolicited phone calls to Andrew Brownstein and Benjamin Roth, partners of Wachtell Lipton, at the firm's office in New York.  Wachtell Lipton is a law firm organized as a general partnership under New York law.  It has one office, in New York City.  CVR had never before retained Wachtell Lipton, and the firm had never solicited CVR's business, in Kansas or anywhere else.

Gross informed Brownstein and Roth that CVR was aware that the firm had represented another corporation in its recent successful effort to resist a hostile takeover by Icahn.  Gross conveyed an invitation from the CVR board of directors for Wachtell Lipton to speak to the board at a telephonic board meeting on Sunday, January 15, 2012.  Brownstein and Roth participated in the meeting, and afterwards, Gross informed them by telephone that the CVR board of directors wished to engage Wachtell Lipton.  Brownstein and Roth accepted the engagement on behalf of the firm.

Roth emailed a letter to CVR confirming the engagement, explaining that New York law governing the conduct of New York attorneys required the firm to send an engagement letter upon undertaking representation, and that the letter was being sent in compliance with that law.

2

At Gross's instruction, Roth addressed the letter to the Kansas City, Kansas office, where Gross was located.  None of Wachtell Lipton's attorneys are licensed to practice law in Kansas, the firm does not maintain an office or employees there, nor does the firm pay taxes, own property, or hold bank accounts in Kansas.

In addition to retaining Wachtell Lipton, CVR also engaged two New York-based financial advisors, Goldman Sachs & Co. and Deutsche Bank Securities, Inc. (the "New York Banks.").

Wachtell Lipton attorneys performed all their work for CVR from the firm's office in New York.  In the course of the engagement, Wachtell Lipton's attorneys communicated by telephone and email with CVR executives, with an occasional face-to-face meeting in New York.  Wachtell Lipton's attorneys also communicated with CVR executives and directors at the company's board meetings, which occurred either in New York or telephonically; counsel never traveled to Kansas.  Wachtell Lipton's attorneys dealt primarily with Edmund Gross while he was in his Kansas City office.  These contacts and discussions included the negotiation of engagement letters with the New York Banks, SEC filings, alternative strategies regarding Icahn's tender offer, and a Transaction Agreement entered into in April 2012.  In connection with these discussions, which Gross avers occurred on a nearly daily basis, Defendants sent Gross for review and discussion a number of documents, including drafts of engagement letters, SEC filings, the Transaction Agreement, and Minutes of the Board of Directors.  In addition, Gross avers that Brownstein and Roth often commented on other documents sent to them for review, including press releases and correspondence.

On February 16, 2012, the Icahn Group announced that it would launch a proxy contest

and a tender offer for all of CVR's outstanding shares.  Wachtell Lipton assisted CVR in preparing fifteen filings with the SEC.  On the cover page of each filing, "Edmund S. Gross," along with the address and phone number of CVR's headquarters in Sugarland, Texas, is listed as the contact information for the person authorized to receive notices and communications on behalf of CVR.  The filings were copied to Brownstein and Roth in New York City.

After the Icahn Group announced its intent to launch a tender offer, the New York Banks proposed to Frank Pici, CVR's Chief Financial Officer, that CVR execute a second round of engagement letters with the Banks providing for "'success' fees if CVR was sold."  The Banks sent a summary of the proposed fees to Pici, and Pici and the Banks then negotiated the fee terms.

On February 27 and 28, 2012, the CVR board held two days of meetings at Wachtell Lipton's New York office.  The minutes of the CVR board meeting that date reflect that Roth explained to the board that the New York Banks would receive a fee based on a percentage of CVR's enterprise value if the company were sold, and a different fee if CVR remained independent after the tender offer.

By May 2012, the Icahn Group owned approximately 69% of CVR's outstanding shares and thus controlled CVR.  The new Icahn-controlled CVR board ordered the company not to pay fees to the New York Banks, and the Banks brought actions for breach of contract against CVR in the New York Supreme Court.  CVR is defending the actions in part on the basis that its board did not authorize the fee terms of the second engagement letters, that Wachtell Lipton never advised its board of the fee terms, and that the firm's draft of the minutes for that meeting falsified that presentation.

4

CVR subsequently filed this action in Kansas against Defendants, claiming Wachtell Lipton committed malpractice in advising it regarding the New York Banks' engagement fees. Defendants then brought an action against CVR in New York Supreme Court seeking a declaratory judgment that CVR has no malpractice claim against the firm or its attorneys.

## II.   Legal Standard

A plaintiff bears the burden of establishing personal jurisdiction over a defendant.[1]  When a court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion.[2]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[3]

The Court's subject matter jurisdiction over this suit is based on diversity of citizenship. "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."[4]  CVR asserts that Defendants are subject to jurisdiction in Kansas under the state's long-arm statute, K.S.A. § 60-308(b).  Because Kansas' long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction analysis under Kansas law collapses into the inquiry

---

[1]*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[2]*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008).

[3]*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[4]*Intercon*, 205 F.3d at 1247.

required by the Due Process Clause.[5]  This due process inquiry imposes two requirements: 1) the defendant must have minimum contacts with the forum state and 2) exercising jurisdiction must not offend traditional notions of fair play and substantial justice.[6]

### A.    Minimum Contacts

The due process clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state.[7]  This standard can be met in one of two ways.  First, a court may exercise general jurisdiction if the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum State."[8]  Second, a court may exercise specific jurisdiction if: 1) the out-of-state defendant "purposefully directed" his activities at residents of the forum state and 2) the plaintiff's injuries arose from those purposefully directed activities.[9]  CVR alleges this Court has specific jurisdiction over Defendants.

Recently, the Supreme Court addressed the issue of minimum contacts necessary to create specific jurisdiction.  In *Walden v. Fiore*, the Court explained, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."[10]  The Court emphasized two aspects that must be present for a state to exercise jurisdiction over a nonresident defendant.  First, the relationship

---

[5]*Id.*; *Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp. 2d 1049, 1055 (D. Kan. 2012).

[6]*OMI Holdings*, 149 F.3d at 1091.

[7]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[8]*Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012).

[9]*Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

[10]134 S. Ct. 1115, 1121 (2014).

6

between the defendant and the forum state must arise out of contacts that the "defendant *himself*" creates with the forum state.[11]  "Due process limits on a State's adjudicative authority principally protect the liberty of the nonresident defendant not the convenience of plaintiffs or third parties."[12]  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State."[13]  "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated."[14]

Second, the jurisdictional analysis must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[15]  "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[16]  "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[17]  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated

---

[11] *Id.* at 1122 (emphasis in the original).

[12] *Id.*

[13] *Id.*

[14] *Id.* (internal quotation marks omitted).

[15] *Id.*

[16] *Id.*

[17] *Id.* at 1123.

with the State."[18]

**B.      Fair Play and Substantial Justice**

Once a plaintiff has made a minimum contacts showing, the court must still consider whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice."[19]  The defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[20]  This requires the weighing of the following factors: (1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.[21]

**III.    Discussion**

Purposeful direction in a tort-based lawsuit, such as this one, has three elements: (a) an intentional action (b) expressly aimed at the forum state, (c) with knowledge that the brunt of the injury would be felt in the forum state.[22]  CVR had pleaded enough facts at this stage of the litigation to show that Defendants' actions were intentional and that they knew CVR would be harmed in Kansas.  Therefore, the Court's analysis focuses on the second element—whether

---

[18]*Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[19]*Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013).

[20]*Burger King*, 471 U.S. at 477.

[21]*Newsome*, 722 F.3d at 1271.

[22]*Id.* at 1264–65, 1268.

Defendants "expressly aimed" their activity at Kansas.[23]

CVR argues that Kansas can exercise personal jurisdiction over Defendants because they sent the retention letter to Gross in Kansas, and communicated nearly daily actionable tortious advice to CVR in Kansas, for which they were paid six million dollars in fees from Kansas. CVR argues that the content of these negligent communications included negligent advice that forms the basis for some of its underlying claims for malpractice against Defendants, which establishes minimum contacts with Kansas. In support of its position, CVR cites three cases from the District of Kansas where the court found jurisdiction over out-of-state lawyers or law firms.[24]

Defendants counter that the contacts between them and Kansas that CVR identifies are insufficient, citing the recent Tenth Circuit decision in *Newsome v. Gallacher*.[25] In that case, the court held that out-of-state lawyers were not subject to suit in a client's home forum when they have neither solicited business from the client in that forum nor performed services there.[26] There, a bankruptcy trustee for a wholly-owned subsidiary corporation brought suit against the parent corporation's directors and its former counsel, a Canadian law firm, and one of its

---

[23]In the Memorandum and Order granting limited jurisdictional discovery (Doc. 24), Magistrate Judge James granted CVR's request for discovery on Defendants' general transaction of business in Kansas for the purpose of addressing the second part of the due process analysis, whether the exercise of jurisdiction would offend traditional notions of "fair play and substantial justice." CVR did not request discovery on the first part of the analysis, as it argued it had submitted sufficient evidence of Defendants' minimum contacts. Thus, CVR's position that Magistrate Judge James "effectively" and "implicitly" found that Defendants have minimum contacts with Kansas in her ruling permitting jurisdictional discovery is not well-taken.

[24]*See Hutton & Hutton Law Firm, L.L.C. v. Girardi & Keese*, No. 13-1115-RDR, 2014 WL 36313, at *7 (D. Kan. Jan. 6, 2014); *Skepnek v. Roper & Twardowsky, LLC*, No. 11-4102-KHV, 2012 WL 4463490, at *3 (D. Kan. Sept. 27, 2012); *Wilson v. Olathe Bank*, No. 97-2458-KHV, 1998 WL 184470, at *2 (D. Kan. Mar. 2, 1998).

[25]722 F.3d 1257 (2013).

[26]*Id*. at 1280–81.

partners.[27]  All defendants were Canadian citizens or entities domiciled in Canada.[28]  The bankruptcy trustee sued in Oklahoma even though the business was a Canadian-owned Delaware corporation.[29]  The bankruptcy trustee alleged that the individual defendants conspired to maximize their profits by shifting unsustainable debt from the parent to the subsidiary.[30]

The Tenth Circuit acknowledged that the subsidiary corporation sustained injury in the forum state because "all or nearly all of [its] creditors" were Oklahoma residents,[31] but rejected the notion that the corporation's presence or injury in the forum state could sustain jurisdiction: "[E]ven though a client may feel the effects of the lawyer's misdeeds in the client's home forum, the client cannot sue the lawyer there on that account alone."[32]  The court then analyzed defendants' contacts with the forum state and concluded that the law firm and its partner "had virtually no connection to Oklahoma."[33]  Specifically, the law firm was "not licensed to practice law or otherwise do business in Oklahoma, d[id] not advertise in Oklahoma, ha[d] no offices or other real property in Oklahoma, ha[d] no bank accounts in Oklahoma, and d[id] not pay taxes in Oklahoma."[34]  Significantly, "the law firm never reached out to [the corporation] in Oklahoma to

---

[27]*Id*. at 1262–63.

[28]*Id*.

[29]*Id*.

[30]*Id*.

[31]*Id*. at 1268.

[32]*Id*. at 1280.

[33]*Id*. at 1281.

[34]*Id*. at 1263.

solicit business,"[35] and "performed all of its services . . . in Canada."[36]   The court further noted that plaintiff did not claim injury arising from the bankruptcy proceedings themselves, "e.g., some sort of malpractice committed in representing the subsidiary before the bankruptcy court," but instead claimed injury that led to the subsidiary's demise, and thus the law firm did not purposefully direct its efforts at plaintiff in Oklahoma.[37]   The court concluded the law firm defendants' connections to Oklahoma were insufficient to establish the necessary minimum contacts.[38]   The court noted the split regarding whether out-of-state legal work on an out-of-state matter can subject an out-of-state lawyer to personal jurisdiction in the client's home forum, and adopted the majority rule, explaining, "[w]e agree with the majority that an out-of-state attorney working from out-of-state on an out-of-state matter does not purposefully avail himself of the client's home forum's laws and privileges, at least not without some evidence that the attorney reached out to the client's home forum to solicit the client's business."[39]

The Court finds that under both *Walden* and *Newsome*, Defendants' connections are insufficient to establish personal jurisdiction in Kansas.  *Walden* teaches that the "proper question is not where the plaintiff experienced a particular injury but whether the defendant's conduct connects him to the forum in a meaningful way."[40]   Like the lawyer defendants in *Newsome*, Defendants are not licensed to practice law or otherwise do business in Kansas, have

---

[35]*Id.*

[36]*Id.* at 1279.

[37]*Id.* at 1281.

[38]*Id.* at

[39]*Id.* at 1280–81.

[40]134 S. Ct. at 1125.

no offices or other real property in Kansas, have no bank accounts in Kansas, and do not pay taxes in Kansas. Moreover, there is no evidence that Defendants reached out to Kansas to solicit CVR's business. To the contrary, it was CVR who reached out to New York to solicit Wachtell Lipton's services; Roth emailed a confirmation letter to Gross only after Gross solicited the law firm's services. Nor did the *Newsome* court find significant the fact that a law firm was paid from the forum state's bank account.[41]

In addition, CVR did not suffer any alleged injury in Kansas. CVR is claiming injury arising from Defendants' representation of CVR in negotiating fair and appropriate fee terms with the New York Banks, which CVR hired to respond to Icahn's takeover attempt. Any injury that CVR sustained led to lawsuits for breach of contract brought by the Banks in New York, and did not arise from any proceedings in Kansas. Indeed, the meeting of the CVR board at which CVR claims that Roth did not explain the Banks' fee terms occured in New York. Like the lawyers in *Newsome*, Defendants are being sued for transactional work, not litigation. Thus, CVR's injuries do not arise out of Defendants' Kansas-related activities. Moreover, CVR does not dispute that more than 80% of its stock is owned by a partnership that is headquartered in New York and controlled by Icahn, a New York resident.[42] Any alleged injury to CVR therefore occurred in New York.

The cases cited by CVR in support of its position are distinguishable from this case. Significantly, in each case, the defendant attorneys not only made allegedly tortious communications to Kansas, but also were alleged to have solicited business from Kansas

---

[41]*Id*. at 1281.

[42]*Id*. at 1268 (holding that the injury in that case occurred in Oklahoma because "all or nearly all of [the corporation's] creditors are Oklahoma residents").

residents.  In *Skepnek v. Roper & Twardowsky, LLC*, the defendant, a New Jersey law firm, solicited the assistance of the plaintiff, a Kansas attorney, in prosecuting an action in New Jersey and entered into a fee-sharing agreement with him.[43]  Likewise, in *Hutton & Hutton Law Firm, L.L.C. v. Girardi & Keese*, another fee-sharing dispute between lawyers, the defendant, a California law firm, solicited the business of the plaintiff, a Kansas law firm.[44]  And, in *Wilson v. Olathe Bank*, the defendant attorney acted as a "trade reference" and in that capacity, "touted the financial viability and benefits" of distributorship to potential investors in Kansas, including the plaintiffs.[45]  As previously discussed, Wachtell Lipton and its partners did not solicit CVR's business, in Kansas or anywhere else.  CVR identifies no authority in support of its position that out-of-state lawyers can be deemed to have minimum contacts with Kansas based on communications to a plaintiff's employee in Kansas, when the out-of-state lawyers neither solicited business from the plaintiff nor performed services in Kansas.[46]

Accordingly, Defendants cannot be forced to defend CVR's malpractice claims in Kansas.  Because CVR fails to satisfy the first prong of the personal jurisdiction analysis, the Court need not reach the second step—whether exercising jurisdiction would offend traditional notions of fair play and substantial justice.

---

[43]2012 WL 4463490, at *3.

[44]2014 WL 36313, at *7.

[45]1998 WL 184470, at *2.

[46]Nor does it appear that CVR is a Kansas resident. CVR's website and SEC filings report that it is a Delaware corporation with its principal place of business in Texas, and is thus a resident of those states.  The fact that CVR conducts business and has an office in Kansas does not make it a Kansas resident. *See Newsome*, 722 F.3d at 1267 (explaining corporations are residents of the states where they are incorporated and maintain their principal place of business) (citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)); *Amwest Sur. Ins. Co. v. Guarantee Elec. Constr. Co.*, No. 00-2196-JWL, 2000 WL 1310512, at *1 (D. Kan. Aug. 21, 2000) (plaintiff corporation incorporated in Nebraska with its principal place of business in California was not a Kansas resident, despite conducting business from an office in Kansas).

**B.**     **Venue**

In this district, the standards for deciding a motion to dismiss under Rule 12(b)(3) for improper venue are generally the same as those for deciding a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.[47]  28 U.S.C. § 1391(b) governs venue and requires that "a substantial part of the events or omissions giving rise to the claim occurred" in this district.[48] Because the Court finds no personal jurisdiction over Defendants, the Court likewise finds that venue is improper.

**C.**     **Dismissal or Transfer Under 28 U.S.C. § 1631**

The Court is faced with two options: dismiss CVR's claims against Defendants or transfer the case to the proper jurisdiction, which the parties agree is the United States District Court for the Southern District of New York.  The Tenth Circuit has recognized that where a court lacks jurisdiction and the interests of justice require transfer rather than dismissal, the correct course of action is to transfer pursuant to  28 U.S.C. § 1631.[49]  When deciding whether to dismiss or transfer, a court looks at several factors, including (1) whether the action would be time barred; (2) whether the claims likely have merit and dismissal or transfer would best serve the interests of judicial economy; and (3) whether the action was filed in what the plaintiff either realized or should have realized was an improper forum.[50]

---

[47]*Proud Veterans, LLC v. Ben-Menashe*, No. 12-cv-1126-JAR, 2014 WL 791200, at *11 (D. Kan. Feb. 27, 2014) (citing *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1057–58 (D. Kan. 2006)).

[48]*See* 28 U.S.C. § 1391(b).

[49]*See Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006).

[50]*Id.* at 1223 n.16 (citing *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996)).

14

Defendants' arguments opposing transfer are not persuasive.  Although a new action would not appear to be time-barred if this action is dismissed, CVR raises concerns of a potential "first to file" issue, precluding a new lawsuit under New York law.  And, although Defendants' alleged legal malpractice has been raised as a defense in the pending breach of contract action against CVR brought  by the New York Banks, Defendants are not parties to that action.  Further, while the *Newsome* decision was issued several months before CVR filed this action, CVR made a good faith argument why that case was distinguishable from the facts in this case and thus Kansas was the proper forum.  Because this lawsuit could have been brought in the Southern District of New York, and a transfer to that forum would conserve judicial resources and avoid unnecessary legal expenses, and CVR's case does not appear to be legally frivolous, the Court finds that the interests of justice compel transfer rather than dismissal.  The Court therefore directs that this case be transferred to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1631.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss for lack of personal jurisdiction and improper venue (Doc. 9) is DENIED.

**IT IS FURTHER ORDERED** that the Clerk transfer this action to the United States District Court for the Southern District of New York.

**IT IS SO ORDERED.**

Dated: <u>August 14, 2014</u>

<u> S/ Julie A. Robinson </u>

**JULIE A. ROBINSON**

**UNITED STATES DISTRICT JUDGE**

15